## Nahum E. Thomas v. The City of Port Huron.

*Constitutional law : Railroad aid : Legislative power.* The legislature have no authority to pass statutes authorizing townships or cities to pledge their credit in aid of the construction of a railroad; such legislation is void both upon the fundamental principles underlying the taxing power, and also upon specific provisions of our state constitution.—*People v. Township of Salem, 20 Mich., 452 ; People v. State Treasurer, 23 Mich., 499.*

*Railroad aid bonds: Municipal corporations.*  The fact that a city has received in exchange for void bonds issued under such an enabling act, the bonds of the railroad company in whose favor the city bonds were issued, does not make valid the unauthorized obligations of the city.  A municipal corporation has no general authority to exchange promises with other corporations or persons; its contract, to be valid, must be within the scope of the authority conferred upon it by law, and for municipal purposes.

*Heard April 11.    Decided July 11.*

Error to St. Clair Circuit.

*Chadwick, Stevens & Thomas,* for plaintiff in error.

*Cyrus Miles* and *R. P. & J. B.' Eldredge,* for defendant in error.

COOLEY, J.

This suit is upon a bond issued by the city of ·Port Huron under the provisions of "An act to authorize any of the townships and cities of the counties of St. Clair, Lapeer, Genesee and Shiawassee, to pledge their credit in aid of the construction of a railroad from Port Huron to some point on the line of the Detroit & Milwaukee railroad, in Shiawassee county," approved March 18th, 1865.—*Laws of 1865, p. 547.*

The bond in question, with others, amounting in the aggregate to thirty-seven thousand five hundred dollars,· was issued to the Port Huron & Lake Michigan railroad company, in exchange for bonds of the company to an equal amount, and no question is made as to the several provisions of the act regarding the issue of such bonds having been complied with.    And we are to consider this case on the concession that no question is involved but that of the liability of the city issuing such bonds under the legislation referred to, and in accordance therewith.

.    The constitutional power of the legislature to pass enabling acts like the one in question was so fully considered in *People v. Township Board of Salem, 20 Mich., 452,* and *People v. State Treasurer, 23 Mich., 499,* that any further

27 MICH.—41.

discussion would seem superfluous.   We have held in those cases that on the fundamental principles underlying the taxing power, and also upon specific provision of the state constitution, such legislation is void.

When this case was presented, we were all of opinion that the two previous cases must rule this, and that it presented no new features which could distinguish it.   But as it was strongly pressed upon us that the fact of the city having received the bonds of the railroad company in exchange for its own, furnished a legal consideration which would support its undertaking, we have allowed the case to lie over to this time for more mature reflection.

Further consideration, however, does not enable us to reach this conclusion.   Putting aside as unauthorized the enabling act in question, it will not be pretended that the city had any authority whatever for issuing these bonds.   And the only point presented for decision is, whether, when a municipal corporation issues its obligations without authority of law, the fact that it receives in exchange therefor the obligations of the party to whom they are issued can make valid the unauthorized obligations of the city.

It is not claimed that the city has ever received from the railroad company any payment upon the bonds of the latter, either by way of principal or of interest.

If it had, we should agree with counsel that it could not retain such payments and at the same time refuse to pay its own bonds.   But we do not concede that such payments could afford a support for the bonds thus illegally issued; the case, on the other hand, would be one of money received without consideration, and which the party equitably entitled might recover in the proper legal or equitable proceeding.   What that proceeding should be, or who should institute it, we need not undertake to indicate; the parties concerned would probably not be at a loss to determine for themselves, when the facts should warrant suit. But the case now is simply this: The city officers have received and now hold bonds of the railroad company which

THOMAS *v.* PORT HURON.

the city has no authority to retain and collect, and other parties, including the plaintiff in this suit, have paid moneys to the railroad company for its benefit, and for the ultimate repayment of which by the railroad company as principal debtor, these railroad bonds were to be security. The intermediate security which the city was to give, and in respect to which its position as regards the railroad company would be that of surety merely, proves to have been illegal and therefore fails, but as regards the ultimate security no question of legality or validity is raised; and under such circumstances the claim that the city should pay its own unauthorized bonds,' because the railroad bonds still remain with the city treasurer, but not in any manner used or enforced, does not seem to us warranted by law. A municipal corporation has no general authority to exchange promises with other corporations or persons; its contracts, to be valid, must be within the scope of the authority conferred upon it by law, and for municipal purposes. And if, under pretense of law, its officers in its name obtain money, property, or rights in action which equitably belong to another, the fact may entitle the party to a proper remedy, but it cannot make good these bonds, unless it is to be held that the power of municipal corporations to make legal promises is co-extensive with that of individuals, and that any contracts they may make are valid where it can be said that any thing of value was given or inconvenience submitted to in exchange. The position assumed by the plaintiff in this case inevitably leads to this result.

Our conclusion is, that there is no error in the record, and the judgment will be affirmed, with costs.

CAMPBELL, J., and CHRISTIANCY, Ch. J., concurred.

GRAVES, J.

I agree that this case is ruled by the views declared by the majority of the court in the Salem and Bay City cases, and should therefore be affirmed.