O. E. TOWNSEND et al., Plaintiffs, Appellants, v. E. E.
GARRETT et al., Defendants, Appellees.

SCHOOLS AND SCHOOL DISTRICTS: Consolidation—Notice of
1 Election—Sufficiency. Sec. 2746, Code 1897, does not require the
posting of five election notices in each of several independent
school districts which it is proposed to consolidate.

SCHOOLS AND SCHOOL DISTRICTS: Attaching Territory to Ad-
2 joining District. Sec. 2791, Code 1897, authorizing territory to
be attached to a school district under certain conditions, is man-
datory, in that any attempted annexation of territory, without
the order of the county superintendent, is nugatory.

*Appeal from Davis District Court.*—HON. C. W. VERMILION,
Judge.

SATURDAY, MAY 15, 1915.

SUIT in equity brought by the plaintiffs to test the legal-
ity of the proceedings of the organization of the Consolidated
Independent District of Troy named as defendant.  The indi-
vidual plaintiffs are alleged to be residents and taxpayers in
the territory included in such district.  They join as defend-
ants the purported officials of such consolidated district.
There was a decree dismissing the petition.  Plaintiffs appeal.
—*Affirmed.*

*Jaques & Jaques,* for appellants.

*Payne & Goodson,* for appellees.

EVANS, J.—The Consolidated Independent School Dis-
trict of Troy was so organized as to include the territory of
four independent districts previously existing.  These were
known respectively as the Independent Districts of Troy,
Walnut Grove, Stringtown, and Antioch.  The proceedings

had purported to be in pursuance of Code Sec. 2794-a. The plaintiffs challenge the legality of the proceedings and therefore the legality of the organization of the consolidated district on two grounds:

(1) That the notice of election for the proposed consolidation was insufficient and illegal in that there was a failure to post five notices in each of the existing districts; and

(2) That only a part of the territory of the Independent District of Antioch was included and that the part of such district of Antioch which was excluded consisted of 354 acres and no more; and that therefore the Independent District of Antioch was reduced in its territory to less than 4 sections, in violation of the provisions of such statute.

I. Turning to the first ground of challenge, we have had occasion to consider the question in the recent case of *Schofield v. Independent School Dist.*, 169 Iowa 634. The opinion in that case was handed down since the taking

1. SCHOOLS AND SCHOOL DISTRICTS: consolidation: notice of election: sufficiency.

of the appeal herein. Appellants frankly concede that such holding is conclusive against them on the first ground of their challenge, unless we should become convinced that such case ought to be overruled. The reasons for our conclusion appear in the opinion in that case and we adhere to it without hesitation. We have no need to repeat the discussion.

II. The second point urged by appellants is that the territory of the former District of Antioch was included in the consolidated district only in part, and that the excluded

2. SCHOOLS AND SCHOOL DISTRICTS: attaching territory to adjoining district.

part was less than 4 sections, as already indicated. On the other hand, the appellees contend that all the former District of Antioch was and is included in the consolidated district. The real dispute between the parties at this point arises over the question, What was the true south boundary line of such former district of Antioch? The

contention of the appellees is that such independent district was located in Union Township and that its south boundary line was the south line of Union Township; and this is the line adopted as the south boundary line of the consolidated district.

The appellants concede that the principal part of the territory of the Independent District of Antioch was in Union Township and upon its south line. They contend, however, that it extended across such line into Prairie Township on the south and included 354 acres in Sections 4 and 5 of Prairie Township. The dispute at this point is one of fact. The records introduced are in great confusion and are inconsistent and contradictory in their various parts. The trial court found as a fact that the District of Antioch did not embrace land in Prairie Township. The result of this finding of fact was to hold that the entire district was included in the consolidated district.

In a written opinion filed by the trial court, the following discussion of the evidence appears:

"The first page of the record book of Antioch District bears a statement as follows:

" 'Sections and parts of Sections embracing the boundary of the Independent School District of Antioch No. 10, Union Township, Davis County, Iowa.' This is followed by a description by government subdivisions, of land in Union Township, and certain lands in Sections four and five in Prairie Township. On pages eight and nine of this record book is found the following:

" 'The electors of the Independent District of Walnut Grove, Union Township, Davis County, Iowa, met according to previous notice given to vote on question of division of district ———————. The votes all being cast in favor of separate organization at said meeting, the following described land was set off for the purpose of forming an independent district.' Then follows a description of lands in

Union Township including all now conceded to have been in Antioch district, and then this: 'The following described land in Prairie Township was attached to the foregoing for school purposes. The northeast quarter of Section five, and the Northeast quarter of the Northwest quarter of Section 5, the Northwest quarter of Section 4, 14 acres off the West side of Southwest quarter of the Northeast quarter of Section 4.'

"It is to be noted the description found here and that on the first page of the book do not agree, either in respect to the land in Union, or that in Prairie Township. The entry is not dated, but following it, is one dated March 8th, 1880, which shows the organization of the new district, and the selection of the name Antioch.

"A plat book in the office of the County Auditor containing plats of school districts shows in pencil, on the plats of both Union and Prairie Townships, the plats themselves being in ink, the lands described in the above record as in Antioch district. One witness testified that the lands in dispute in Prairie Township belonged to Antioch school district.

"On the other hand, there is testimony from those long familiar with both districts to the effect that they never heard of any land in Prairie Township being in Antioch School District, and that the land in dispute had been regarded, and treated as a part of Pulaski district in Prairie Township. One hundred and sixty acres of the land in Section five, having been taxed in Pulaski district prior to 1880, was taxed in Union Township from 1880 to 1882, in Pulaski district in 1883 and 1884, in Union Township from 1885 to 1888, in Pulaski in 1889 and 1890, in Union from 1891 to 1894, and ever since in Pulaski district; and forty acres was taxed in Pulaski prior to 1884, in Union from 1885 to 1888, and ever since in Pulaski. The remainder of the land in controversy was taxed in Pulaski prior to 1880, and from then to 1888 in Union, and ever since in Pulaski. From this record one thing, at least, seems clear; that prior to 1880,

the land in Prairie Township, now claimed to be a part of Antioch district, was not a part of that district, or of any district out of which it was formed. It does not appear to have been a part of Walnut Grove district, which was divided by the setting off of territory to form the Antioch district, for it is not included in the territory so set off, but is said by the record to be attached to it for school purposes. From the payment of taxes in Pulaski district prior to that time the conclusion is warranted that it had been a part of that district. *District of Ottumwa v. Taylor,* 100 Iowa 617.

"The only way by which territory could be attached to an adjoining school corporation at the time of the organization of Antioch district was the same as that now provided for by Sec. 2791 of the Code.

"The County Superintendent, when, in his opinion, any of the inhabitants of a school corporation could not, by reason of natural obstacles, attend school in their own district with reasonable facility could, by written order in duplicate, attach the territory so affected to an adjoining school corporation, the board of the same consenting thereto.

"The only power possessed by the board of directors of Antioch district, or of Walnut Grove district at the time it was divided, in respect to adding territory from Pulaski district was to consent to an order made by the County Superintendent to that effect.

"What no doubt would have been effectual as such consent is shown, but nothing more.

"The action of the County Superintendent was essential. No presumption that he had acted should be indulged in—if it could be in any event—in view of the fact that during the greater part of the time since, and continuously for the past twenty years the territory has been treated as in Pulaski, and not in Antioch district. There is no doubt that some attempt was made to attach this land to Antioch district, and that it was thereafter for a time, considered a part of it. The entries in the record book referred to were doubtless

made, and the plats in the auditor's office changed in that belief. It is not, however, improbable that it was upon the discovery twenty or twenty-five years ago of the insufficiency of the proceedings for that purpose that the territory ceased to be treated as a part of Antioch district. At all events, I am clear, the court is not now required to find that the lands in dispute became a part of Antioch district upon proof of proceedings insufficient to effect the change, and where the action that was taken has been entirely disregarded by all interested for such a length of time. I conclude that no part of Antioch district is shown to have been left out of the consolidated district."

A careful examination of the abstracts satisfies us that the foregoing is a fair analysis of the evidence upon the disputed question and that the legal conclusion drawn therefrom by the trial court was correct.

It follows that both grounds of attack upon the legality of the organization must be denied. The order entered below is therefore—*Affirmed.*

DEEMER, C. J., PRESTON and WEAVER, JJ., concur.